## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MARYLAND

| | |
|---|---|
| DEANGELA WINSTON | * |
| 2918 Presstman Street | * |
| Baltimore, MD 21216 | * |
| *Individually and on behalf of a class* | * |
| *of others similarly situated* | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *      Case No. 10-2425 |
| | * |
| STEWART TITLE GUARANTY | * |
| COMPANY | * |
| 1980 Post Oak Blvd., Suite 800 | * |
| Houston, Texas   77056 | * |
| SERVE ON: | * |
| Elizabeth Sammis, | * |
| Acting Commissioner of | * |
| Insurance | * |
| Maryland Insurance | * |
| Administration | * |
| 525 St. Paul Place | * |
| Baltimore, Maryland 21202, | * |
| | * |
| Defendant. | * |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DeAngela Winston (hereinafter the "Named Plaintiff"), on her own behalf and on behalf of the class defined herein, by and through her undersigned counsel, hereby sues Defendant Stewart Title Guaranty Company ("Stewart Title") and states as follows:

## I.      INTRODUCTION

1.      This is a class action by homeowners seeking relief from the predatory practices of a title insurer, Stewart Title Guaranty Company, which violated both its statutory and common law obligations.  In particular, the Defendant participated in a scheme to systematically cheat Maryland consumers who refinance their mortgages, by charging them premiums for title

insurance that are far in excess of the rates permitted under Maryland law.

2.      As a Title Insurer, Defendant Stewart Title relies heavily on local title companies, as Insurance Producers, or agents to assist it in procuring title insurance policies.   As compensation for such services, Stewart Title splits the premiums paid for the title insurance between itself and the Insurance Producer.

3.      Under the common law of Maryland, this action seeks to recover the excess and unearned premiums paid to Stewart Title.   Throughout the applicable statute of limitations, Stewart Title systematically collected funds from class members it was not entitled to collect.  In particular, instead of charging and collecting a discounted premium filed with and approved by the Maryland Insurance Administration ("MIA") as the "reissue rate" for Maryland purchasers of title insurance who refinanced their mortgages within ten years of a previously issued title insurance, Defendant Stewart Title, through its agents and/or employees, instead collected the much higher premium – the "original issue rate" – from such class members.   Rather than provide the rates filed with the Maryland Insurance Administration, as required under Maryland law, the Defendant charged class members an amount of money that it was neither entitled to have nor receive.   The excess premiums charged to and collected from the Named Plaintiff and the class members were then split with the local title company (i.e., Insurance Producer) that procured the title policy on behalf of Stewart Title, as an additional referral fee or kickback, in violation of Maryland law.

4.      Plaintiffs are a putative class of Maryland consumers whose property had, within the previous 10-years, a validly issued title insurance policy – entitling them to a 40% discount off of the premium for newly issued title insurance policies by Stewart Title – but who did not

2

receive any such discount off of the premium for title insurance.

## II.     JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question), and 28 U.S.C. § 1367(Supplemental Jurisdiction).

6.     Venue is proper in the District because, under 28 U.S.C. § 1391(b), a substantial part of the events giving rise to the claims herein occurred within this District and the conspirators all systematically and continually transact business in this District.

## III.    THE PARTIES

### A.     The Named Plaintiff

7.     Plaintiff DeAngela Winston is a resident of Baltimore City who has owned her property at 2918 Presstman Street since 1997.

### B.     The Co-Conspirators

8.     Conspirator Stewart Title is a Texas corporation doing business in the State of Maryland as a title insurance underwriter, or a title "insurer . . . engaged as an indemnitor, surety or contractor in the business of entering into insurance contracts," as set forth in Md. Code Ann. Insurance § 1-101(v).

9.     Stewart Title is licensed to underwrite and issue title insurance policies for properties located in Maryland and also conducts business in other states, as well.

10.    Upon information and belief, Stewart Title writes and issue thousands of title policies each year.

11.    At all times relevant to this Complaint, Stewart Title operated in Maryland with the assistance of its title insurance agents, otherwise known as "Insurance Producers" which

Maryland law defines as a "person that, for compensation, sells solicits, or negotiates insurance contracts . . .[for] persons issuing the insurance contracts." Md. Code Ann. Insurance § 1-101(u)(1).

12.     Stewart Title with these unnamed Insurance Producers participated as co-conspirators  with each other and various other persons, firms and entities in the offenses charged, and have performed acts and made statements  in furtherance of the scheme to collect excessive and unearned title insurance premiums at the expense of the consumer.

## IV.     FACTS APPLICABLE TO ALL COUNTS

13.     Stewart Title is "engaged as indemnitor, surety, or contractor in the business of entering into insurance contracts," and as such, is a title "insurer" under the Maryland Insurance Code. Md. Code Ann., Insurance 1-101(v).

14.     As a Title Insurer, Defendant Stewart Title relies heavily on local title companies, as Insurance Producers, or agents to assist it in procuring title insurance policies on behalf of owners and lenders.

15.     To compensate the Insurance Producers for securing the title insurance policy, and as a referral fee, Stewart Title splits the premiums paid for the title insurance between itself and the Insurance Producers.

16.     Upon information and belief, Stewart Title will pay the Insurance Producers, as compensation and as a referral fee, up to seventy-five percent (75%) or more of the premium collected from the borrowers.

17.     The Maryland Insurance Code provides that a Title Insurer must file "all rates or premiums, supplementary rate information, forms of contracts, policies, or guarantees of

insurance, and all modifications of contracts, policies, or guarantees of insurance that it proposes to use" with the Maryland Insurance Administration. Md. Code. Ann., Insurance § 11-403(a)(1) & (2).

18.     As Title "Insurers" selling title insurance in Maryland, the Defendant is obligated to "hold to the rates or premiums as approved by the Commissioner …" and may "…not deviate from the rates or premiums . . ." so approved. Md. Code Ann., Insurance § 11-407(b).   In addition, a Title Insurer such as the Defendant, is prohibited from making or issuing any "contract, policy or guarantee of insurance except in accordance with filing approved as provided in this subtitle . . ." *Id*. at  § 11-407(a).

19.     Further, under the MIA's "Best Price Rule," the Defendant Title Insurer  "must always place a consumer in the most favorably priced tier for which the consumer qualifies." *See* MIA's General Guidelines.

20.     Pursuant to the Maryland Insurance Code, Defendant Stewart Title filed its title insurance rates with the Maryland Insurance Commissioner. Upon information and belief, such rates have been in effect since at least 2001.

21.     Upon information and belief, Stewart Title's filed rates provide that whenever an application for new title insurance policy is made within 10 years of a previously issued title insurance policy on the same property, then Stewart Title, including its agents or employees, is required to charge a "reissue" premium for such insurance.

22.     Upon information and belief, if a borrower satisfies the requirements of Stewart Title's filed "reissue rate," then the borrower is entitled to a 40% discount off of Stewart Title's published rates in force for original title insurance up to the face value of the previous policy.

23.     Stewart Title relies heavily on the unnamed co-conspirators – the local title companies – as Insurance Producers, or agents to assist it in the issuance of title insurance policies.  As compensation for such services, Stewart Title splits the premiums paid for the title insurance between itself and the unnamed co-conspirators' title companies.

24.     Upon information and belief, Stewart Title and the unnamed co-conspirators uniformly and consistently fail and/or refuse to honor the "reissue rate" for borrowers who are entitled to such a rate, and, accordingly have required borrowers, including but not limited to the Named Plaintiff, to pay at least 40% more than the legally permitted rate for the reissued title insurance, to their loss and detriment.

## V.     FACTS APPLICABLE TO THE NAMED PLAINTIFF DEANGELA WINSTON

25.     DeAngela Winston purchased her home located at 2918 Presstman Street, Baltimore, MD 21216 in October 1997 for $34,000.

26.     In connection with her loan closing, Ms. Winston purchased an owner's title insurance policy covering the full value of her home.

27.     On or about June 26, 2007, Ms. Winston refinanced her home.  The closing and settlement services were provided by Express Financial Services, Inc. (i.e., an "Insurance Producer"), a Maryland company that is an agent of Stewart Title.

28.     The loan amount for Ms. Winston's June 2007 refinance was $64,800.

29.     In connection with the June 2007 refinance, the Maryland Insurance Producer, by and on behalf of its principal – Defendant Stewart Title – issued a Lender's title insurance policy with a face value of $64,800.

30.     Line 1108 of Ms. Winston's June 26, 2007 HUD-1 Settlement Statement indicates

that Stewart Title charged and collected from Ms. Winston a premium of $162.50 for the Lender's title insurance policy.

31.     In connection with the September 18, 2002 refinance, however, Ms. Winston was entitled to a discounted "Reissue Rate" premium for the amount of Lender's title insurance up to the amount of the owner's policy she purchased in 1997.  At the time, Stewart Title's reissue rate on file with the Maryland Insurance Administration was $1.50 per thousand up to $250,000, and its original issue rate was $2.50 per thousand. Under Maryland's Best Price Rule, Ms. Winston should have been provided with a reissue rate in connection with her title insurance policy. Instead, Ms. Winston paid a non-discounted, excessive premium of $162.50, or $2.50 per thousand on her $64,800 loan – the full "original issue" rate.

32.     In charging Ms. Winston an excessive and illegal premium for the Lender's title insurance policy, Stewart Title pocketed the difference between the rate Ms. Winston should have been charged and the full "original issue" rate she was charged, and refused to credit any portion of it to Ms. Winston's account.

33.     As a title insurance company, Stewart Title, through its agent the Insurance Producer, would have conducted a title search of the Plaintiffs' property and that of other class members and would most assuredly have discovered that the Named Plaintiff, and in fact, all class members, were refinancing mortgages that were all eligible for the discounted "reissue rate."

34.     Despite full knowledge that the Named Plaintiff and the class members were eligible for a "reissue rate," the Defendant willfully and knowingly overcharged the Named Plaintiff and other class members insurance rates in excess of filed rates.

35.     On August 18, 2009, Named Plaintiff filed a complaint with the Maryland Insurance Administration ("MIA"), on behalf of herself and as part of a Class of similarly situated persons (that had already been certified under Federal Rule of Civil Procedure 23 in *Woods v. Stewart Title Guaranty Co*., Civil Action No. CCB-06-0705), regarding Stewart Title's overcharge for title insurance described above.  That Complaint is attached hereto as Exhibit A, and incorporated herein.

36.     On March 25, 2010, the MIA issued a letter stating its findings with respect to Ms. Winston's August 18, 2009 Complaint.  In that letter, the MIA used its expertise to determine that Stewart Title overcharged Ms. Winston in her June 26, 2007 transaction, and stated that Stewart Title's acts in this regard were in violation of the Unfair Methods of Competition and Unfair and Deceptive Acts or Practices Subtitle of Title 27 of the Maryland Insurance Code, Md. Ins. §27-216(b)(i).  The MIA's letter stating its findings is attached hereto as Exhibit B.

## VI.     CLASS WIDE ALLEGATIONS

37.     Named Plaintiff brings this action individually and as a class action pursuant to Fed. R.Civ. P. 23 on behalf of a class (the "Class") defined as follows:

> All persons or entities in Maryland who, within 10 years of an owner's title insurance policy having previously been purchased in connection with a mortgage or fee interest, purchased or refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Stewart that exceeded the applicable premium discount or "reissue rate" for the title insurance on file with the Maryland Insurance Administration that such persons or entitles should have been charged. Excluded from the Class are officers and directors of the Defendants, as well as any personnel of the Court.

38.     The Class as defined above is identifiable.  The Named Plaintiff is a member of the Class.

39.     The Class consists, to Named Plaintiff's information and belief, of thousands of individuals, and is thus so numerous that joinder of all members is clearly impracticable.

40.     There are questions of law and facts which are not only common to the Class, but which predominate over any questions affecting only individual class members.   The predominating questions include, but are not limited to:

(a)     Whether the Defendant and its agents systematically collected premiums from Class Members in amounts not permitted under the Maryland Insurance Code.

(b)     Whether the Defendant and its agents intentionally and/or negligently omitted to disclose material facts to the Named Plaintiff and the Class that they need only the discounted premiums for the reissuance of title insurance on the refinancing of their mortgages or fee interests.

(c)     Whether the Defendant and its agents owed the Named Plaintiff and the Class a duty of care to obtain information and documents necessary to determine the best rate for which the Named Plaintiff and the Class were entitled to receive under the Maryland Best Price Rule.

(d)     Whether the Defendant and its agents breached an implied in fact contract with the Named Plaintiff and the Class.

(e)     Whether the Defendant and its agents were unjustly enriched by their improper conduct.

(f)     Whether the Defendant and its agents should be enjoined from further engaging in such improper conduct.

(g)     Whether the Defendant and its agents were part of a conspiracy that harmed the Class.

(h)     Whether Named Plaintiff and members of the Class have sustained damages and the proper measure of such damages.

(i)     Whether the Defendant and its agents paid and/or received illegal referral and unearned fees of the title insurance issued to the Class.

(j)     Whether the Defendant's scheme to overcharge Named Plaintiff and the Class was a fraud scheme.

(k)     Whether the Defendant used the US Mails in furtherance of the fraud scheme.

(l)     Whether the Racketeer Influenced Corrupt Organizations statute, Public Law 91-452, 18 U.S.C. § 1961, *et seq*. ("RICO") applies to the Defendant's activities.

(m)     Whether the Defendant was part of a conspiracy to defraud the class.

(n)     Whether the Defendant was involved in any racketeering activity.

(o)     Whether Defendant participated in the operations of a racketeering enterprise.

(p)     Whether the racketeering acts were conducted as part of a pattern.

(q)     Whether the racketeering enterprise affected interstate commerce.

(r)     Whether Defendant utilized an Association-in-Fact as a racketeering enterprise.

(s)     Whether the commission by co-conspirators of numerous acts of mail fraud was in furtherance of their scheme to defraud.

(t)      Whether Defendant sent or directed the sending of documents through the United States Postal Services in furtherance of the scheme to defraud.

(u)      Whether Defendant directly or indirectly invested in, maintained an interest in, or participated in the conduct or management of an enterprise.

(v)      Whether Defendant transported money interstate converted or fraudulently obtained.

41.      The claims of the Named Plaintiff are typical of the claims of each member of the Class, within the meaning of Fed.R.Civ.P. 23(a)(3) and are based on and arise out of identical facts constituting the wrongful conduct of Defendant.

42.      Plaintiff will fairly and adequately protect the interest of the Class.   Named Plaintiff and the Class have retained counsel experienced and competent in class actions and complex consumer litigation.

43.      Named Plaintiff has no conflict of interest with the Class.

44.      The prosecution of the separate actions by individual members of the Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R.Civ.P. 23(b)(1)(A)).

45.      Defendant's actions are generally applicable to the Class as a whole, and Plaintiff seeks equitable remedies with respect to the Cass as a whole within the meaning of Fed.R.Civ.P.23 (b)(2).

46.      Common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed.R.Civ.P.23(b)(3).  The

likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  To Plaintiff's knowledge, no other litigation against Stewart Title is currently pending by other members of the Class.

47.     There are no unusual difficulties in the management of this case as a class action.

## VII.    CIVIL RICO SUMMARY

48.     In connection with the activities giving rise to this action, the Defendant acted with malice, intent and knowledge, and with a wanton disregard for the rights of Plaintiffs and other consumers.

49.     At all relevant times herein, the "enterprise" described herein, was engaged in interstate commerce in that, *inter alia*, the title insurance policies which are the subject of the scheme to defraud set forth in this Complaint, were underwritten and issued in Maryland and were serviced out-of-state Defendant Stewart Title.

50.     The "enterprise" described herein was an association-in-fact between Stewart Title and its title agents in Maryland, such as Express Financial Services.  The settlement agents of Plaintiff and the Class worked with and assisted Stewart Title in misrepresenting the amount due and owing for title insurance and misappropriating the overcharges.

51.     The enterprise is separate and distinct from Defendant and from each of the other members of the enterprise.  The enterprise is an ongoing organization and exists to advance the interests of the individual entities that comprise its membership.  The enterprise engages in the legitimate marketing of title insurance policies, performing title searches, and investigating and paying claims.  Its activities are directed by Stewart Title and include the use of systems and procedures for conducting title searches, for collecting and processing payments for title

searches and title insurance policies, for issuing policies, and for providing title insurance for lenders and owners, and the relationship between Defendant and its title agents is governed by an agency agreement.  Stewart Title and its agents function as a continuing unit.  Each member of the enterprise performs a role in the group consistent with its organizational structure, which furthers the activities of the enterprise to market and sell title insurance.

52.     Stewart Title is the principal in the enterprise and has the responsibility for providing title insurance policies.  Stewart Title has an agent selection process to select agents to issue Stewart Title policies.   The title agents act as Stewart Title's agents in selling title insurance policies and often act as closing agents for the lenders in the same mortgage transactions.  The title agents, acting on Stewart Title's behalf and subject to Stewart Title's direction and control, are responsible for conducting the title searches and (with Stewart Title's assistance) calculating the title insurance premiums. The title agents take a percent of the premiums collected as their remuneration for their services.  The title agents are not employees of Defendant, but rather are non-exclusive agents who work with different title insurance companies – and although they have agency agreements with Stewart Title, they are separate, independent entities which do not function as subsidiaries or employees of Stewart Title.  The title agents act in furtherance of the fraudulent scheme to overcharge insurance customers, acting simultaneously as title agents and closing agents.  Stewart Title directed the activities of the title agents in the course of the enterprise, and authorized them to issue title insurance policies on Stewart Title's behalf.

53.     The purpose of the enterprise created by the Defendant was to guarantee a stream of business for itself and in return transfer illegal payments and kickbacks to the unnamed title

insurance producers to reward the unnamed title insurance producers for the guaranteed stream of business.   In order to create the payments and kickbacks the unnamed title insurance producers and Stewart Title overcharged borrowers for title insurance.

54.     In order to further this fraud scheme, the co-conspirators used the United States mails and telephone wires interstate which constituted the offense of mail fraud and wire fraud as proscribed and prohibited by 18 U.S.C. §§ 1341 and 1343 and multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314. Defendant and its co-conspirators on numerous occasions used and caused to be used mail depositories of the United States Postal Service by both placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed mailable matter from said depositories.

55.     For example, during the relevant class period, Stewart Title used the United States mails and telephone wires to submit annual reports to the MIA in an effort to demonstrate to the MIA that Stewart Title's premiums collected from consumers complied with Maryland law. Unless Stewart Title made such a representation to the MIA through the annual reports, it could not continue to issue title insurance to consumers as set forth consumers in Maryland.  Relying on the legitimacy of the enterprise and the documentation submitted by Stewart Title, the MIA permitted Stewart Title to continue conducting business in this state.

56.     Moreover, in connection with the preparation of the insurance binder in connection with the Named Plaintiff's refinancing Express Financial Services transmitted by wire and/or the US mail, the title insurance commitment of Named Plaintiff; such transmission was a pre-condition for Stewart Title and Express Financial Services to collect a title insurance

premium from Ms. Winston.

57.     Moreover, in connection with the settlement of the Named Plaintiff's refinancing, Express Financial Services transmitted by wire and/or the US mail, the title insurance policy of Named Plaintiff DeAngela Winston that was issued in furtherance of the scheme set forth herein.

58.     At all relevant times herein, in connection with the activities giving rise to this action, the Defendant and its co-conspirators conspired with each other to engage in the various activities set forth herein, agreed to participate in the operation of the conspiracy and scheme to defraud Named Plaintiff and other consumers, and aided and abetted one another in these activities, all as proscribed by federal law.

59.     As set forth herein, during the relevant times, and in furtherance of and for the purpose of executing the scheme and artifice to defraud, the Defendant on numerous occasions used and caused to be used, mail depositories of the United States Postal Service by both placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed mailable matter from said depositories, including, but not limited to HUD-1 Settlement Statements, correspondence, other loan closing documents, original owner's title insurance policies and lender's title insurance policies.

60.     Specifically, once a month, and on other periodic bases, and continuing through the date of this Complaint, the unnamed title insurance producers would tally up their illegal profits and distribute the gains between themselves and Stewart Title through either the US Mails or by wire transfer.  Upon information and belief, the distributions, if sent by mail, were always sent from a location in Maryland through the US Mails to Stewart Title in Texas.  Each of these wires or use of the mails was in furtherance of the fraudulent scheme described herein.

15

Upon information and belief, this money paid by Plaintiff and the Class for their title insurance policies – having an aggregate value of more than $5,000 – was transported in interstate commerce, in the course of the execution of the scheme and artifice to defraud, when Defendant knew the same to have been stolen, converted or taken by fraud.

61.     Moreover, Named Plaintiff DeAngela Winston, on June 26, 2007, received a package at the closing of her transactions at 6200 Old Dobbin Lane, Columbia, Maryland which was sent via the U.S. Mails and/or via interstate wires to Express Financial Services and delivered by Express Financial Services to Ms. Winston. This package included a piece of correspondence from the enterprise's co-conspirators and also included the owner's title insurance policy issued by Stewart Title and countersigned by Express Financial Services.  This package attempted to and was successful in deceptively hiding the fact that Stewart Title had overcharged Ms. Winston for a title insurance policy, and in furthering that deception and fraudulent scheme.  In addition, at or about the same time, Ms. Winston received a HUD-1 Settlement Statement misrepresenting the appropriate charge for her title insurance policy by stating she owed $162.50 for that policy, which was then sent via mail or wire to the lender in the transaction in furtherance of the fraudulent scheme.  Ms. Winston did not protest the fees charged by Stewart Title and Express Financial Services, and signed the HUD-1 Settlement Statement.

62.     Ms. Winston paid the title insurance premium for the lender's policy in her June 26, 2007 transaction even though the policy was solely for the benefit of the lender.   The facsimiles and mailers and HUD-1 Settlement Statement attempted to and were successful in deceptively hiding the fact that Stewart Title and Express Financial Services had overcharged

Ms. Winston for title insurance and in furthering that deception and the fraudulent scheme.

63.     These mailers, which included a piece of correspondence and either an owner's or lender's title insurance policy, and HUD-1 Settlement Statements, were not limited to the Named Plaintiff, but rather, were also sent through the United States mails to each member of the Class completing a transaction where one of the unnamed Title Insurance Producers charged and collected a fee from a consumer.  The co-conspirators repeated this pattern – that is, the use of the United States mails in furtherance of the scheme – in more than 10,000 similar real estate transactions.  Each such use of the United States mails in connection with the scheme and artifice to defraud constituted the offense of mail fraud as proscribed and prohibited by 18 U.S.C. § 1341.

64.     The enterprise functioned as a continuing unit with a common purpose of deliberately overstating the amounts due and owing for title insurance, and Defendant has knowledge of the overcharging and acted with the intent to defraud.  The enterprise operated continuously for well over six years and affected more than 10,000 borrowers' transactions – used form documents that were sent through the US Mails and constituted a pattern of racketeering activity.

65.     If Plaintiff and class members had then suspected that Stewart Title and the Title Insurance Producers were overcharging them on their title insurance premiums, and further that the overcharge was in furtherance of a scheme to launder the payment of illegal fees and kickbacks, at their expense, they would have refused to conduct business with Stewart Title, or at a minimum, would not have paid overcharges, and would have sought to secure their rights under the law at that time.

66.     Plaintiff and Class members' injuries to their property were caused by Defendant's initial contribution from illicit income to create the enterprise that was derived from previous racketeering activity in that the enterprise would not have been in operation had it not been for the Defendant's other and previous racketeering activities.

## FIRST CAUSE OF ACTION
### Money Had and Received

67.     Plaintiff incorporates and re-alleges each of the foregoing allegations as if fully set forth herein.

68.     As set forth above, Defendant assessed and collected premiums for title insurance in amounts exceeding the rates that Defendant had filed with the Maryland Insurance Administration.

69.     By doing so, Defendant has come into the possession of money in the form of premium payments for title insurance that it had, and has no right to at law or in equity.

70.     It would be inequitable for Defendant to retain any such monies that it had no legal right to charge.

71.     As a consequence, Named Plaintiff and the members of the Class have been damaged.

WHEREFORE, Plaintiff and the Class pray that:

A.      The Court determine, as provided by Fed. R. Civ. Proc. 23, that this action proceed as a class action;

B.      Plaintiff and other members of the Class recover damages determined to have been sustained by each of them and that judgment be entered against the Defendant for the amount determined, including pre-judgment interest;

18

C.      Plaintiff and the members of the Class they represent recover the costs and expenses of this suit, including reasonable attorneys' fees;

D.      The Court grant such other and further relief as the case may require, including equitable and/or injunctive relief.

## SECOND CAUSE OF ACTION
### Negligence

72.     Plaintiff incorporates and re-alleges each of the foregoing allegations as if fully set forth herein.

73.     Defendant, its agents and/or employees negligently failed to obtain the information and documents that would have revealed that each and every one of them was entitled to the discounted title insurance rate, as alleged herein.

74.     As a direct and proximate result of Defendant's negligence, Named Plaintiff and the Class purchased and/or paid for title insurance at rates that were in excess the rates provided for under the law of Maryland.

75.     Defendant, its agents or employees, owed a duty of care to the Named Plaintiff and the Class, including the duty not to collect a premium or charge for insurance that exceeds the premium or charge to which the Named Plaintiff and the Class were entitled to receive under the Maryland Best Price Rule and Md. Ins. Code § 27-216(b)(1).

76.     Defendant negligently breached the duty of care it owed to Named Plaintiff and the Class by failing to obtain the information and documents that would have revealed that each and every one of them was entitled to the discounted title insurance rate, as set forth herein.

77.     As a result of the negligence of Defendant, its agents and/or employees, Named Plaintiff and the Class suffered actual damages or loss.

19

WHEREFORE, Plaintiff and the Class pray that:

A.      The Court award Plaintiff and the Class compensatory damages in an amount to be determined by the jury;

B.      The Court award Plaintiff and the Class reasonable costs and attorneys' fees; and,

C.      The Court award Plaintiff and the Class such other and further relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION
### Breach of Contract

78.     Plaintiff incorporates and re-alleges each of the foregoing allegations as if fully set forth herein.

79.     Defendant formed an agreement and entered into a contract with each of the Plaintiffs and with Class members including offer, acceptance, and consideration (hereinafter called the "Contract").

80.     Defendant entered into an implied in fact contract with the Plaintiffs and each Class member, which included offer, acceptance, and consideration.

81.     Pursuant to the Contract, Plaintiffs and Class members paid money to Defendant in exchange for its providing a lender's policy of title insurance to Plaintiff's and Class Members' lenders, so that they could obtain mortgage refinancing. Defendant received premiums in exchange for the issuance of a policy of title insurance.  By statute, the Contract includes, without limitation, Defendant's obligation to charge a premium in accordance with its filed and approved Maryland rates, including, but not limited to the Defendant's obligation under Md. Code Ins. § 27-216 (b)(1) to not willfully collect a premium for insurance that is less than the

premium or charge applicable to title insurance under rates as filed and approved by the Insurance Commissioner.

82.     By operation of law, if the Contract contains any term that violates the applicable provisions of the Insurance Code, that term will be deemed invalid and the Contract will be construed in a manner that meets the requirements of the Code. Thus by operation of law, the Contract includes Defendant's discounted refinance rate.

83.     Implied in the contract is also Defendant's obligation to comply with the requirements of the Insurance Code, and to operate in good faith.

84.     Plaintiff and Class members performed their obligations under the Contract by paying the premiums charged by Defendant through its agents.

85.     Defendant breached the Contract by, without limitation, (a) charging Plaintiff and Class members more than the contract, as it must be construed, allows by failing to charge them the discounted refinance rate in accordance with Defendant's filed and approved rates; and (b) failing to inform Plaintiff and Class members that they qualified for such discounted rates.

86.     As a direct and proximate result of Defendant's breach of contract, Plaintiff and Class members have suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiff and the Class pray that:

A.     The Court award Plaintiff and the Class compensatory damages in an amount to be determined by the jury;

B.     The Court award Plaintiff and the Class reasonable costs and attorneys' fees; and,

C.     The Court award Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## FOURTH CAUSE OF ACTION

## VIOLATION OF FEDERAL LAW – 18 U.S.C. 1962(a)

87.     Plaintiff incorporates and re-alleges each of the foregoing allegations as if fully set forth herein.

88.     Each Plaintiff and each class member is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

89.     Each Defendant and conspirator is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(a).

90.     Through the agreements between Stewart Title and each of the unnamed Title Producers and through the contractual arrangement and joint management activity between the co-conspirators, Defendant formed an association-in-fact with the other conspirators which constitutes an "enterprise" engaged in illegal activities affecting interstate commerce pursuant to 18 U.S.C. §§ 1961(4) and 1962(a).

91.     Each of the conspirators were associated with this "enterprise" and did use or invest income derived from a pattern of racketeering activity under 18 U.S.C. §§ 1961(1) and (5) to operate, maintain control of, and maintain an interest in the enterprise.

92.     These unlawful activities included multiple instances of mail fraud, including but not limited to using and causing others to use, mail depositories of the United States Postal Service by both placing and causing to be placed mailable matters in said depositories and by removing and causing to be removed mailable matter from said depositories.  Documents sent through the United States Postal Services mails include correspondence along with either an owner or lender's title insurance policy in violation of 18 U.S.C. § 1341, which occurred uniformly and consistently prior to the existence of the "enterprise."  In addition, the unlawful

22

acts included the transport, transmittal and transfer in interstate commerce money of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, in violation of 18 U.S.C. §2314.

93.     The purpose of the Defendant's and co-conspirators' association-in-fact was to charge borrowers exorbitantly high fees with respect to title insurance and to give effect to the scheme described above.  This association-in-fact by Defendant and conspirators enabled them to disregard evidence that the Named Plaintiff and class were entitled to discounted rates for title insurance, thus defrauding the public by requiring them to pay title insurance premiums that exceeded the premium permitted by the filed rate.

94.     The association-in-fact had a common or shared purpose; that is, to charge borrowers inflated and illegal fees, to defraud members of the public and to give effect to the scheme described above, and it had a distinct division of labor.  It continued as a unit, with a core membership, over a substantial period of time, exceeding five years, and was an ongoing organization established for an economic motive.  The association-in-fact remained viable and active at the time this action was filed.

95.     Stewart Title and the unnamed title insurance producers each played a substantial and distinct role in the scheme.

96.     In this association-in-fact, the title insurance producer made the initial contact with the consumer.  The title insurance producers falsely and intentionally misrepresented to their customers that they would pay only the filed or best rate for title insurance.

97.     The title insurance producers then selected Stewart Title as the underwriter knowing, or having reason to know, that Stewart Title would make little if any effort to enforce

the discounted reissue rate, thus maximizing the charge imposed upon the consumer.

98.     Stewart Title also actively participated in the scheme to defraud by accepting payment of the fees passed through the unnamed title insurance producers, supplying form documents and other assistance along the way.

99.     Stewart Title also actively participated in the scheme to defraud by negotiating the terms of its various agreement(s) with its co-conspirators. The improper use of these agreements resulted in the conspirators requiring borrowers to unwittingly pay excessive and illegal fees in respect of mortgage loan transactions.

100.    Stewart Title utilized this scheme to generate a large and steady stream of referrals from the unnamed title insurance producers.

101.    To further the scheme, co-conspirators used the United States Postal Service in each class member transaction to mail a piece of correspondence enclosed with a title insurance policy.  In each transaction the title insurance policy was sent through the US Mails to the lender as well as to Stewart Title.

102.    In addition to turning a blind eye to all of the evidence that entitled the Named Plaintiff and the class to the discounted title insurance premium, the unnamed title insurance producers' role in this scheme was to transfer the funds paid by the borrowers for the title insurance commitments and policies.  Although each HUD-1 Settlement Statement represented that the title insurance producer was paid ostensibly valid fees, for such services, the fees payable to the title insurance producers, as reflected on each HUD-1 Settlement Statement, were in fact (and unknown to the borrower) paid to and split between Stewart Title and the title insurance producers.

103.     All of these activities of the association-in-fact form a pattern, continuous in nature, which consists of numerous unlawful individual acts directed to the Named Plaintiff and to each class member.  The illegal activities of Defendant and other conspirators persisted over an extended period of time between at least 1999 and continuing until the present day.  Each mailed correspondence, which also included either a lender's title insurance policy, was sent out in furtherance of the conspiracy for which the Defendant is liable.

104.     These activities of the co-conspirators entailed multiple instances of mail fraud consisting of intentional mail fraud intended to induce, and inducing, Plaintiff and the class to part with property and/or to surrender legal rights in violation of 18 U.S.C. § 1341.

105.     Through the use of this illegal and fraudulent scheme, and through its efforts to operate and maintain the enterprise described herein, to maintain the conspiracy and to facilitate overcharges for title insurance, the Defendant and other conspirators have been able to retain money which is rightfully payable to Plaintiff and Class members, and to collect money not properly due from the Named Plaintiff or Class members.

106.     The co-conspirators retained these illegally gained funds and reinvested and used those funds in their operations in violation of 18 U.S.C. § 1962(a).

107.     Plaintiff and all class members have been injured in their property by reason of the operation of the enterprise in this unlawful manner and by investment of illicit proceeds from previous racketeering activities in the enterprise.

WHEREFORE, Plaintiff and the Class pray that:

A.     The Court award Plaintiff and the Class damages suffered as a result of the illegal acts set forth herein including compensatory damages in an amount equal to the overcharges for

title insurance;

B.      The Court award Plaintiff and the Class treble damages;

C.      The Court award Plaintiff and the Class reasonable costs and attorneys' fees; and,

D.      The Court award Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## FIFTH CAUSE OF ACTION
## VIOLATION OF FEDERAL LAW - 18 U.S.C. § 1962(c)

108.    Plaintiff incorporates and re-alleges each of the foregoing allegations as if fully set forth herein.

109.    Each Plaintiff and each Class member is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

110.    The co-conspirators are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

111.    The association-in-fact described above was an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), which enterprise was engaged in, and the activities of which affect, interstate commerce.

112.    Defendant was associated with the enterprise and participated in its management and operation by directing its affairs and by conducting business with co-conspirators and assisting in the scheme to charge borrowers excessive and illegal fees in connection with issuance of title insurance policies. The Defendant participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of unlawful activity under 18 U.S.C. § 1961(i)(b), 1961(5) and 1962(c), to wit

(a)     Multiple acts of mail fraud, in violation of 18 U.S.C. § 1341;

26

(b)     Multiple instances of wire fraud in violation of 18 U.S.C. § 1343; and

(c)     Multiple instances of interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

113.    Each Class member suffered injury to their property, within the meaning of 18 U.S.C. § 1964(c), by reason of the violation of 18 U.S.C. § 1962(c).

WHEREFORE, Plaintiff and the Class pray that:

A.      The Court award Plaintiff and the Class damages suffered as a result of the illegal acts set forth herein including compensatory damages in an amount equal to the overcharges for title insurance;

B.      The Court award Plaintiff and the Class treble damages;

C.      The Court award Plaintiff and the Class reasonable costs and attorneys' fees; and,

D.      The Court award Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## SIXTH CAUSE OF ACTION
## VIOLATION OF FEDERAL LAW - 18 U.S.C. § 1962(d)

114.    Plaintiff incorporates and re-alleges each of the foregoing allegations as if fully set forth herein.

115.    Plaintiff and each Class member are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1964(c).

116.    The co-conspirators are "persons" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(d).

117.    The association-in-fact described above was an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(a), which enterprise was engaged in, and the activities of

which affect, interstate commerce.

118.    The Defendant as co-conspirator was associated with the enterprise described herein, and conspired within the meaning of 18 U.S.C. § 1962(d) to violate § 1962(a) and (c).

119.    The Defendant as co-conspirators conspired to use or invest income derived from a pattern of unlawful activity under 18 U.S.C. § 1961(1) to acquire an interest in, establish and operate the enterprise and has done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343 and interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

120.    The Defendant as co-conspirators conspired to operate, maintain control of, and maintain an interest in the enterprise and has done so through a pattern of unlawful activity including under 18 U.S.C. § 1961(1), *inter alia*, multiple instances of mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343 and interstate transport of money converted or fraudulently obtained in violation of 18 U.S.C. § 2314.

121.    The named Plaintiff and each Class member has suffered injury to his property within the meaning of 18 U.S.C. § 1964(c) by reason of the commission of overt acts constituting illegal activity in violation of 18 U.S.C. §§ 1961(1) and 1962(d).

WHEREFORE, Plaintiff and the Class pray that:

A.    The Court award Plaintiff and the Class damages suffered as a result of the illegal acts set forth herein including compensatory damages in an amount equal to the overcharges for title insurance;

B.    The Court award Plaintiff and the Class treble damages;

C.      The Court award Plaintiff and the Class reasonable costs and attorneys' fees; and,

D.      The Court award Plaintiff and the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff and the Class demand a trial by jury of all issues so triable.

Respectfully submitted,


_____/s/_____
Richard S. Gordon  (Fed. Bar No. 06882)
Benjamin H. Carney  (Fed. Bar No. 27984)
Quinn, Gordon & Wolf, Chtd.
102 West Pennsylvania Avenue, Suite 402
Towson, Maryland 21204
(410) 825-2300

Philip S. Friedman (Fed. Bar No. 22766)
Friedman Law Offices, PLLC
2401 Pennsylvania Avenue, N.W., Suite 410
Washington, D.C. 20037
(202) 293-4175

Attorneys for the Plaintiffs

29