## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DeANGELA WINSTON, on behalf of herself and all others similarly situated | : : : | |
| v. | : | Civil No. CCB-10-2425 |
| | : : | |
| STEWART TITLE AND GUARANTY CO. | : : : : : | |

## MEMORANDUM

Plaintiff DeAngela Winston ("Ms. Winston") has brought this action, on behalf of herself and a similarly situated class of plaintiffs (collectively, "the plaintiffs"), against defendant Stewart Title Guaranty Company ("Stewart"). The complaint alleges that Stewart overcharged her and other consumers who refinanced their homes within ten years of obtaining valid title insurance on the same property by not providing them discounted "reissue" rates. Ms. Winston asserts claims under Maryland law and violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. Now pending before the court is Stewart's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The issues in this case have been fully briefed and no oral argument is necessary. For the following reasons, Stewart's motion will be denied.

**Background**

DeAngela Winston has owned her home in Baltimore City since 1997. (Compl., ECF No. 1, ¶ 25.) At the time Ms. Winston purchased the property, she obtained an owner's title insurance policy covering the full value of her home (*Id.* at ¶ 26.) In June 2007, Ms. Winston refinanced

her home, at the same time obtaining a lender's title insurance policy with a face value of

$64,800 from Express Financial Services, Inc. ("Express"). (*Id.* at ¶ 27, 29.) Express was acting

as a local insurance producer on behalf of Stewart, a Texas corporation doing business in

Maryland as a title insurance underwriter. (*Id.* at ¶ 29, 8.) Stewart charged Ms. Winston a

premium of $162.50 for the title insurance policy. (*Id.* at ¶ 30.)

Ms. Winston alleges that Stewart violated statutory and common law by charging her and

the members of the class she seeks to represent premiums for title insurance that exceed rates

permitted under Maryland law.[1] The plaintiffs claim that, despite full knowledge that Ms.

Winston and the class members were eligible for a discounted "reissue rate," Stewart "willfully

and knowingly" charged them at the non-discounted, original issue rate and "pocketed the

difference."[2] (*Id.* at ¶¶ 31-32, 34.) The plaintiffs further allege that Stewart participated as co-

conspirators with unnamed insurance producers and other entities "in furtherance of a scheme to

collect excessive and unearned title insurance premiums at the expense of the consumer." (*Id.* at

¶ 12.)

On August 18, 2009, Ms. Winston filed a complaint with the Maryland Insurance

Administration ("MIA"), on behalf of herself and as part of a class of similarly situated persons.

(*Id.* at ¶ 35 & Ex. A.) In a letter issued on March 25, 2010, the MIA determined that Stewart,

through its insurance producers, violated § 27-614(b) of the Insurance Article, Annotated Code

---

[1] The purported class is defined as "All persons or entities in Maryland who, within 10 years of an owner's title insurance policy having previously been purchased in connection with a mortgage or fee interest, purchased or refinanced the identical mortgage or fee interest, and were charged a title insurance premium by Stewart that exceeded the applicable premium discount or 'reissue rate' for the title insurance on file with the Maryland Insurance Administration that such persons or entities should have been charged." (ECF No. 1, ¶ 37.) Ms. Winston asserts that her claims are typical of each class member's claims.

[2] The Maryland Insurance Code requires that a title insurer (1) "file with the Commissioner all rates or premiums . . . it proposes to use" and (2) "hold to the rates or premiums as approved by the Commissioner." Md. Code, Ins. §§ 11-403(a)(1), 11-407(b); *see also* § 27-216(b)(1) ("A person may not willfully collect a premium or charge for insurance that . . . exceeds . . . [the] rates as filed with and approved by the Commissioner.") The plaintiffs allege that under the rate schedules Stewart filed with the Commissioner, individuals buying title insurance for a mortgage refinancing were entitled to a 40% discount off of Stewart's published rates (the "reissue rate") if they had purchased title insurance for the same mortgage within the previous 10 years. (ECF No. 1, ¶¶ 21-22.)

of Maryland, when it failed to charge Ms. Winston the reissue rate for her title insurance premium. (*Id.* at ¶ 36 & Ex. B, at 1.) The MIA concluded that Ms. Winston had been overcharged $65.00 and was entitled to a refund from Stewart of the amount of the overage plus interest. (ECF No. 1, Ex. B, at 4.) Although Ms. Winston submitted her complaint "on behalf of 'Class Plaintiffs,'" the MIA did not address the class claim, stating "the MIA does not have sufficient information at this time to review the allegations with regard to unnamed and unspecified persons or transactions." (*Id.* at 1.)

On April 9, 2010, Stewart Title tendered payment to Ms. Winston through her counsel in the amount of the overage, plus interest.[3] (Def.'s Mot. to Dismiss, ECF No. 17, at 4 & n.2.) Ms. Winston refused to accept the check. (*Id.*) On September 2, 2010, Ms. Winston filed this class action complaint against Stewart, asserting common law claims for money had and received, negligence, and breach of contract, and three violations of the civil Racketeer Influenced and Corrupt Organizations Act ("RICO") based on Stewart's alleged failure to charge eligible consumers the discounted insurance rate.

On February 22, 2011, the court entered an order granting Stewart's motion to stay the case pending the Fourth Circuit's decision in a related case, *Woods v. Stewart Title Guaranty Company*, No. 10-2104 (4th Cir. Nov. 2, 2011). The case was reopened on January 6, 2012, and Stewart filed a motion to dismiss on March 6, 2012. Stewart argues that Ms. Winston's claims are moot because she sought and received full restitution from Stewart through the MIA proceeding. Stewart also claims that the Fourth Circuit's decision in *Woods* requires dismissal of Ms. Winston's claims.

**Discussion**

---

[3] Stewart Title initially delivered the check to the MIA, but the MIA returned the check and directed Stewart to send it to Ms. Winston's counsel. (Def.'s Mot. to Dismiss, ECF No. 17, at 4.)

The issue before the court is whether Stewart's tender of payment of the overcharge plus interest rendered Ms. Winston's claims moot, requiring their dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

"'[T]he doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction.'" *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 763 (4th Cir. 2011) (quoting *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008)).  A case is moot "'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Id.* A case can become moot due to a change in factual circumstances or in the law. *Id.* "'Generally speaking, one such [factual] circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim." *Id.* (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)).

Stewart claims that the Fourth Circuit's ruling in *Woods v. Stewart Title Guaranty Company*, No. 10-2104 (4th Cir. Nov. 2, 2011), compels dismissal of Ms. Winston's claims. This court dismissed the *Woods* case without prejudice and decertified the class because of Ms. Woods's failure to exhaust administrative remedies with the Maryland Insurance Administration. *Woods v. Stewart Title Guar. Co.*, 2010 WL 786294, *2-3 (D. Md. Mar. 3, 2010). Ms. Woods then filed a complaint with the MIA, and the MIA issued a decision that Ms. Woods had been overcharged. Stewart tendered a check for the overcharge plus interest, but Ms. Woods refused to accept it. Ms. Woods then sought to reopen the case on a Rule 60(b) motion for reconsideration, but this court denied the motion because Ms. Woods had not satisfied one of the enumerated grounds for relief in Rule 60(b) – namely, the MIA's decision was not newly discovered evidence under Rule 60(b)(2) and Ms. Woods had not shown "extraordinary circumstances" necessary to grant a motion under Rule 60(b)(2). *Woods v. Stewart Title Guar.*

*Co.*, 2010 WL 3395655, at *2 (D. Md. Aug. 26, 2010). Ms. Woods appealed, and the Fourth

Circuit subsequently dismissed her appeal as "moot." *Woods*, No. 10-2104, at *1.

  Stewart argues that the Fourth Circuit dismissed Ms. Woods's appeal as moot because

her claim was fully satisfied through the MIA proceeding. Ms. Winston counters that "the

finding of mootness was limited to the appeal, not the claim itself." (Pl.'s Opp., ECF No. 20, at

11.) Ms. Winston is correct. Ms. Woods appealed this court's dismissal of her case on the

grounds that she was not required to administratively exhaust. While her appeal was pending,

however, she exhausted administrative remedies. As a consequence, the Fourth Circuit dismissed

her appeal as moot. From a review of the transcript of oral argument, as well as considering the

procedural posture of the case, it is clear that the Fourth Circuit did not decide whether Stewart

had mooted Ms. Woods's claims by tendering payment for the overcharge. *Woods* therefore has

no bearing on the question of mootness in this case.

  As for Stewart's argument that payment of the overcharge constituted full relief sufficient

to moot Ms. Winston's claims, that too is unavailing. In *Simmons v. United Mortgage & Loan*

*Investment, LLC*, the Fourth Circuit determined that an offer of relief that did not include an offer

of judgment was inadequate to moot a claim. 634 F.3d at 766. The district court had dismissed as

moot a case brought under the Fair Labor Standards Act after the defendants made a settlement

offer "for full relief, including attorney's fees and taxable costs." *Id.* at 762. The Fourth Circuit

reversed, emphasizing that the settlement offer, while purporting to offer "full relief," did not

include an offer of judgment against the defendants. *Id.* at 764. The court explained that from a

plaintiff's view, a judgment in his or her favor "is far preferable to a contractual promise" to pay

the same amount "because district courts have inherent power to compel defendants to satisfy

judgments against them . . . but lack the power to enforce the terms of a settlement agreement

absent jurisdiction over a breach of contract action for failure to comply with the settlement

agreement." *Id.* at 765. Though it noted that "the doctrine of mootness is constitutional in nature,

and therefore, not constrained by the formalities of Rule 68," *id.* at 764, the court nonetheless

concluded that the defendant's failure to offer judgment, along with the conditional and

ambiguous nature of the settlement offer, prevented the mooting of the plaintiffs' claims. *Id.* at

767.

 Turning to the present case, there is no dispute that Stewart has not offered judgment in

the amount of the check it tendered. As in *Simmons*, without a judgment in Ms. Winston's favor,

a court would have no basis to compel Stewart to pay Ms. Winston should the check turn out to

be defective in some way. Stewart's failure to offer the complete relief to which Ms. Winston

claims to be entitled – namely, judgment in her favor – therefore renders Stewart's efforts

insufficient to moot this case.

 In addition, Stewart failed to offer Ms. Winston the full amount she could conceivably

obtain if the case proceeded to trial. The Fourth Circuit has held that an offer of judgment, in

order to moot a claim, must be for the entire amount the plaintiff might be able to receive on his

claims. *See Warren v. Sessoms*, 676 F.3d 365, 372 (4th Cir. 2012). In *Warren*, the plaintiff

brought suit against a debt collector for violations of the Fair Debt Collection Practices Act. *Id.*

at 368. The plaintiff sought an award for unspecified actual damages, statutory damages of

$1,000, costs, and reasonable attorney's fees. *Id.* at 369. The defendants moved to dismiss the

case after they offered the plaintiff judgment under Rule 68 for the maximum statutory damages

and two alternative actual damage awards: $250 or an amount determined by the court. *Id.* The

Fourth Circuit held that neither option mooted the plaintiff's case because she might have been

able to recover more than $250 if her case proceeded to trial, and the defendant's alternate offer was conditional, not unequivocal. *Id.* at 372.

Another judge in this district also has recognized, in a case similar to the present one, that a defendant insurer's payment of an overcharge with interest does not automatically moot the plaintiff's claims. *Mitchell-Tracey v. United General*, 839 F. Supp. 2d 821 (D. Md. 2012). In *Mitchell-Tracey*, the plaintiff homeowners sought review of the court clerk's order taxing costs in favor of the defendant title insurers after the court dismissed the case for failure to exhaust administrative remedies. *Id.* at 824-25. In vacating the clerk's order on the grounds that the defendant was not the prevailing party, the court noted that the plaintiffs were free to file suit again seeking punitive damages, even though they might have been unable to seek compensatory damages, having obtained them through the administrative process following dismissal. *Id.* at 826.

Ms. Winston claims that additional remedies may be available beyond restitution of the overcharge; thus, Stewart did not provide "full relief" sufficient to moot her claims. Stewart argues that Ms. Winston "has no possible claim for punitive damages, attorney's fees, treble damages, [or] costs . . . based on her common law claims." (Def.'s Reply, ECF No. 21, at 5.) Stewart also denies that Ms. Winston has a "legitimate" claim for treble damages or attorney's fees on her RICO claims. (*Id.* at 6.)

The court agrees with Ms. Winston. As to Ms. Winston individually, her civil RICO and common law claims still stand. Whether she can obtain additional damages on these claims has not been decided yet. Because Ms. Winston may be entitled to other remedies beyond the amount of the overcharge plus interest, Stewart has not provided her with the "full relief" necessary to moot her claims.

Finally, Stewart cannot moot Ms. Winston's class action complaint simply by offering relief as to Ms. Winston's individual claims before she can seek class certification. Although the Fourth Circuit has not addressed this precise question, several other circuits have. In *Pitts v. Terrible Herbst*, the defendant employer attempted to moot a class action complaint by making a Rule 68 offer of judgment for the full amount of the putative class representative's individual monetary claims before he could seek class certification. 653 F.3d 1081, 1085 (9th Cir. 2011). The Ninth Circuit held that the employer's offer (which the named plaintiff refused) did not render the class action moot, noting that "[o]nly once the denial of class certification is final does the defendant's offer – if still available – moot the merits of the case because the plaintiff has been offered all that he can possibly recover through litigation." *Id.* at 1092. Other circuits similarly have held that, absent undue delay, a plaintiff may move to certify a class and avoid mootness even after being offered complete relief. *See Lucero v. Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249-50 (10th Cir. 2011); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 920-21 (5th Cir. 2008); *Weiss v. Regal Collections*, 385 F.3d 337, 348 (3d Cir. 2004). *But cf. Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) (holding that an offer of full relief to a named plaintiff mooted a class action where no motion for class certification was pending, but noting that "pendency of [a class certification] motion protects a putative class from attempts to buy off the named plaintiffs"). In addition, a judge in this district has determined that a defendant's offer of complete relief as to a putative class representative's individual claim did not moot that claim where the representative had not yet had an opportunity to move for class certification. *See Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, -- F. Supp. 2d --, 2012 WL 3090297, *4-5 (D. Md. July 30, 2012).

Here, as in *Pitts* and *Kensington*, Stewart is attempting to moot a class action complaint by offering relief as to Ms. Winston's individual claims before she has had an opportunity to move for class certification. While it is not necessary to reach this issue because Stewart did not offer full relief in the form of an offer of judgment, it is appropriate to note that allowing Stewart to moot Ms. Winston's claims via an offer of individual relief would effectively nullify the plaintiffs' ability, potentially, to obtain class certification of their claims.

Although Stewart cites the Fourth Circuit's ruling in *Zimmerman v. Bell*, 800 F.2d 386 (1986), in support of its mootness argument, this case is distinguishable. Unlike in the present case, the defendants in *Zimmerman* offered judgment in the full amount of damages to which the named plaintiff claimed individually to be entitled *after* the district court denied the motion for class certification. *Id.* at 388. As a result, the Fourth Circuit concluded that "[the plaintiff's] personal stake in the outcome had disappeared" and therefore "there was no longer any case or controversy." *Id.* at 390. Here, by contrast, Stewart has not offered Ms. Winston the full relief to which she claims to be entitled, and Ms. Winston has not yet had an opportunity to seek class certification.

In sum, Stewart has failed to provide Ms. Winston with the complete relief necessary to moot her claims. Stewart has made no offer of judgment enforceable in court, nor has Stewart tendered anything for punitive damages, attorney's fees, treble damages, or any other amounts Ms. Winston might receive if her current claims survive. Accordingly, this case is not moot, and Stewart's motion to dismiss will be denied.

A separate Order follows.


<u>February 4, 2013</u>                                          <u>              /s/              </u>
Date                                                          Catherine C. Blake
                                                              United States District Judge